MAYALL HURLEY P.C.
Robert J. Wasserman, CA Bar No. 258538
rwasserman@mayallaw.com
William J. Gorham, CA Bar No. 151773
wgorham@mayallaw.com
Nicholas J. Scardigli, CA Bar No. 249947
nscardigli@mayallaw.com
2453 Grand Canal Boulevard
Stockton, California 95207-8253
Telephone: (209) 477-3833
Facsimile: (209) 473-4818

ACKERMANN & TILAJEF, P.C.
Craig J. Ackerman, CA Bar No. 229832
cja@ackermanntilajef.com
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 277-0614
Facsimile: (310) 277-0635

Attorneys for Plaintiff Justin Titus and the Settlement Class

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN TITUS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE MARTIN-BROWER COMPANY, LLC; and DOES 1-100 inclusive,<br><br>Defendants. | CASE NO.:  2:17-cv-00558-JAM-GGH<br><br>**NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      June 19, 2018<br>Time:      1:30 p.m.<br>Judge:     Hon. John A. Mendez<br>Location:  Courtroom 6, 14th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on June 19, 2018 or as soon thereafter as the matter may be heard, in Courtroom 6, 14th Floor of the United States District Court for the Eastern District of California before the Honorable John A. Mendez, pursuant to Fed. R. Civ. P. 23(e), Plaintiff Justin Titus ("Plaintiff") individually and on behalf of all others similarly situated, will and does hereby move this Court for entry of an order finally approving the class action settlement in this matter, including:

1.    Finally certifying the Class, as defined in the parties' Settlement Agreement and the Court's Preliminary Approval Order, for purposes of settlement;

2.    Finally appointing Plaintiff as the Class Representative for purposes of settlement;

3.    Finally appointing Ackermann & Tilajef, P.C., and Mayall Hurley P.C. as Class Counsel for purposes of settlement;

4.    Finding that notice of the settlement was properly provided to the Class in accordance with the Court's Preliminary Approval Order;

5.    Finally approving the settlement as fair, adequate, and reasonable, based upon the terms set forth in the Settlement Agreement, including payment by Defendant of the non-reversionary Settlement Sum of $393,000, plus $7,000 in mediation fees ($400,000 total), and ordering the parties and the Settlement Administrator to carry out the terms of the Settlement Agreement;

6.    Approving payment of $6,000.00 to Atticus Administration, LLC, the Settlement Administrator, for the costs of administering the settlement;

7.    Approving the Class Representative Service award to Plaintiff in the amount of $7,500.00, to compensate him for the burden, risk, responsibility, time, and effort involved in coming forward on behalf of the Class and for entering into a general release that released claims far broader than those released by the Settlement Class; and

8.    Binding all of the Participating Class Members to the terms of the Settlement Agreement, including the Release specified therein.

This motion is based upon the supporting Memorandum of Points and Authorities, the declarations submitted herewith, including the Declarations of Craig Ackermann and Mai Chao Vang, submitted in support thereof, the exhibits submitted herewith, the declarations submitted with Plaintiff's motion for preliminary approval of the class action settlement and motion for attorneys' fees and costs, and all other papers and records on file in this action, and on such oral and documentary evidence as may be presented at the hearing on this Motion.[1]

Dated: May 29, 2018                    Respectfully submitted,

                                       ACKERMANN & TILAJEF, P.C.
                                       MAYALL HURLEY P.C.


                                  By:  /s/Craig J. Ackermann_____
                                       Craig J. Ackermann, Esq.
                                       Attorneys for Plaintiff and the Class

---

[1] Plaintiff's motion for attorneys' fees and costs, which will be heard at the same time as this final approval motion was filed on May 3, 2018. See Docket No. 20.

# TABLE OF CONTENTS

I.    INTRODUCTION & RELEVANT FACTS ............................................................ 8

    A.    Relevant Factual & Procedural Background ..................................... 9
    B.    Summary of Settlement and Results of Class Notice Administration .......... 11

II.   CLASS MEMBERS WERE GIVEN THE BEST PRACTICAL NOTICE OF THE SETTLEMENT ............................................................. 13

III.  THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT ............... 14

    A.    Legal Standard ................................................................. 14
    B.    Strengths of the Case and Risks of Litigation ............................. 15
    C.    Amount Offered in Settlement ............................................... 17
    D.    The Extent of Discovery Completed and the Stage of Proceedings ............. 18
    E.    Counsel Believes the Settlement is in the Best Interest of the Class ....... 19
    F.    Class Members Overwhelmingly Endorsed the Settlement ......................... 20

IV.   THE PROPOSED PAGA ALLOCATION SHOULD BE APPROVED ............... 20

V.    THE REQUESTED SERVICE AWARD IS REASONABLE ............................... 21

VI.   THE REQUESTED ATTORNEYS FEES AND COSTS ARE REASONABLE ............................................................. 23

VII.  CONCLUSION ............................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Alvarado, et al. v. Nederend*, 2001 U.S. Dist. LEXIS 52793, *31 (E.D. Cal. 2011), E.D. Cal. Case No. 1:08-cv-01099 OWW DLB……………………………………………24

*Barnes v. Equinox Grp., Inc.*, 2013 WL 3988804, at *2 (N.D. Cal. Aug. 2, 1013) ..........15

*Benitez v. Wilbur*, E.D. Cal. Case No. 08-1122 LJO GSA………………………………24

*Birch v. Office Depot, Inc.*, 2008 U.S. Dist. LEXIS 102747, *7 Case No. 06cv1690 DMS (WMC), Doc. No. 48, ¶ 13…………………………………………………………23

*Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864, 872-73 (2013)…………………17

*Bolton v. U.S. Nursing Corp.*, 2013 WL 5700403 (N.D. Cal. Oct. 18, 2013)...................20

*Bond v. Ferguson Enterprises, Inc.*, No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. June 30, 2011) ...........................................................................................22

*Chavez, et al. v. Petrissans*, 2008 U.S. Dist. LEXIS 111596, (E.D. Cal. 2008), 1:08-cv-00122………………………………………………………………………………..24

*Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)..................................15

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) ..........................20

*Davis v. Cox Commc'ns California, LLC*, No. 16cv989 BAS (BLM), 2017 WL 1496407, at *1 (S.D. Cal. Apr. 26, 2017)…………………………………………………...21

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) ...........................................13

*Elliott v. Rolling Frito-Lay Sales, LP*, 2014 U.S. Dist. LEXIS 83796, *29 (C.D. Cal. 2014) No. SACV 11-01730 DOC……………………………………..…………….23

*Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980) ...........................19

*Fernandez v. Victoria Secret Stores,* 2008 U.S. Dist. LEXIS 118631, *1 (C.D. Cal. 2008)………………………………………………………………………………...23

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)..................................................................22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026. (9th Cir. 1998) ..............................15, 20

*Hightower v. JPMorgan Chase Bank, N.A.*, No. CV111802 PSGPLAX, 2015 WL 9664959, at *11 (C.D. Cal. 2015)……………………………………………..23

*Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009)………………………………………………………………..21

*In re Cylink Sec. Litig.*, 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003)............................18

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)................................14

*In re Mercury International Group*, 618 F. 3d 918, 933 (9th Cir. 2010)…………………11

*In re Nordstrom Commission Cases*, 186 Cal. App. 4th 576, 579 (2010)...................21

*In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ......................................15

*Ingalls v. Hallmark Mktg. Corp.,* 2009 U.S. Dist. LEXIS 131078, *6 (C.D. Cal. 2009)..23

*Jack v. Hartford Fire Ins. Co.*, No. 09cv1683 MMA (JMA), 2011 WL 4899942, at *6
   (S.D. Cal. Oct. 13, 2011)..................................................................................21

*Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6
   (E.D. Cal. Sept. 11, 2008) ...............................................................................19

*Louie v. Kaiser Found. Health Plan, Inc.*, No. 08cv0795 IEG RBB, 2008 U.S. Dist.
   LEXIS 78314...........................................................................................................22

*Moore v. Fitness Int'l, LLC*, No. 12cv1551 LAB (NLS), 2014 WL 12571448, at *5 (S.D.
   Cal. Jan. 22, 2014)..............................................................................................21

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ........................13

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal.
   2004)..............................................................................................................14, 15

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1135 (N.D. Cal. 2016)............20

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)........................................13

*Rippee v. Boston Mkt. Corp.,* 20106 U.S. Dist. LEXIS 101136, *13 (C.D. Cal. 2006)
   Case No. 05cv1359 BTM (JMA), Doc. No. 70, at 7–8......................................23

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ................................15

*Singer v. Becton Dickinson & Co.*, No. 08cv821 IEG (BLM), 2010 WL 2196104, at *2
   (S.D. Cal. June 1, 2010).....................................................................................21

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) ...........................14

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 493 (E.D. Cal. 2010) ..........22, 24

*West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS
   76558 ...................................................................................................................22

*Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011) 15

**Statutes**
Bus. & Prof. Code §§ 17200… ........................................................................................10

Fed. R. Civ. P. 23 ..............................................................................................8, 13, 14

Labor Code §§ 203...........................................................................................................17

Labor Code §§ 226....................................................................................................10, 16

Labor Code §§ 226.2..................................................................................................10, 16

Labor Code §§ 226.7..................................................................................................10, 17

Labor Code §§ 1194……………………………………………………......10

Labor Code §§ 2699……………………………………………….16, 20

IWC Wage Order No. 9……………………………………………….10

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION & RELEVANT FACTS

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff Justin Titus, individually and on behalf of all others similarly situated ("Plaintiff") seeks an order finally approving the settlement of this wage-and-hour class action (the "Settlement") brought on behalf of a "Class" of "All persons who have been employed by Defendant as a non-exempt truck driver at its facility in Stockton, California at any time during the period from March 15, 2013 through February 27, 2018 (the "Class Period")". (See Order Granting Preliminary Approval of Class Action Settlement ("PA Order") § 1). The Class consists of 190 individuals.

The Settlement, which was preliminarily approved by this Court on February 27, 2018, contemplates a non-reversionary settlement sum of $393,000.00 (plus a separate payment by Defendant of $7,000 for mediation fees). If the Court grants final approval, the net settlement amount that will be distributed pro-rata to all 189 Participating Class members (*excluding the one individual who timely elected to opt-out) after the requested deductions set forth in the chart below, amounts to **$271,089.51**. (Declaration of Mai Chao Vang ("MCV Decl."), ¶ 8). In light of the 99.4% Class participation rate, since there was only a single opt out, if the Court grants final approval to the class settlement, the Gross Settlement Amount will be allocated as shown on the table on the following page:

| Gross Settlement Amount: | $393,000.00 |
|---|---|
| Attorneys' Fees (25% of the GSA) | ($98,250.00) |
| Litigation Costs | ($2,899.49)[2] |
| Settlement Administration | ($5,761.00)[3] |
| Plaintiff's Service Award | ($7,500.00) |
| PAGA Penalties (75% LWDA portion) | ($7,500.00) |
| Net Settlement Amount | $271,089.51 |

The Settlement is non-reversionary, and the Settlement shares will be distributed to the Class on a "checks-cashed" basis, meaning that all Class members who did not affirmatively opt out of the settlement will automatically participate in the Settlement and receive his or her pro-rata share of the Net Settlement Amount without the need to have submitted a Claim Form. These results are very good - the average settlement share will be $1,426.79 per Class Member, and the highest share will be $2,480.12. (MCV Decl., ¶¶ 9, 10). Moreover, no class members have objected to the settlement or the fee or cost request. (Id., at ¶ 6). Accordingly, there is truly no reason for the Court not to grant final approval of the Settlement, which it previously preliminarily approved.

### A.    Relevant Factual & Procedural Background

With over 3,900 employees worldwide, Defendant is the largest distributor of products to McDonald's fast food restaurants. (*See* Declaration of Craig Ackermann in Support of Plaintiff's Motion for Preliminary Approval [Dkt. No. 16-3] ("Ackermann PAM Decl.") ¶ 16.a). Defendant employed 190 current and former non-exempt truck drivers at its facility in Stockton, California during the Class Period, including Plaintiff. (MCV Decl., ¶ 5).

On March 15, 2017, Plaintiff filed the instant class action Complaint in the Eastern

---

[2] Class Counsel actually incurred litigation costs in the amount of $9,899.49, however, Defendant agreed to pay separately from the Gross Settlement Amount, $7,000 in mediation fees to Plaintiff's Counsel. (CJA Fee Decl., ¶ 16; Wasserman Fee Decl., ¶ 16)

[3] The Court originally approved settlement administration costs in the amount of $6,000, however, since the cost of administration came in lower, the difference of $239.00 will be distributed to Participating Class Members. (See MCV Decl., ¶ 7).

District of California, Case No. 2:17-cv-00558-JAM-GGH wherein he alleged causes of action for Defendant's (1) failure to pay wages separately and hourly for time spent by drivers on statutory rest breaks and other non-driving tasks (Labor Code §§ 1194, 1194.2, and 226.2); (2) failure to provide paid rest periods and/or pay rest break premiums (Labor Code § 226.7 and IWC Wage Order No. 9, Section 12); (3) failure to issue complete and accurate itemized wage statements and maintain copies of accurate itemized wage statements (Labor Code §§ 226, 226.2, and 226.3); (4) failure to timely pay wages at end of employment (Labor Code §§ 201 and 202); and (5) unfair business practices (§ 17200 *et seq.* of the Cal. Bus. & Prof. Code). [Dkt. No. 1]. (Ackermann PAM Decl.., ¶ 17).

On April 24, 2017, Defendant filed an answer to Plaintiff's Complaint generally denying Plaintiff's claims and asserting various affirmative defenses. [Dkt. No. 6]. (Id., at ¶ 18).

On May 16, 2017, the Parties stipulated the filing of the First Amended Complaint ("FAC"). [Dkt. No. 10-1]. The FAC was subsequently filed on May 22, 2017 wherein Plaintiff asserted an additional cause of action for PAGA penalties under Cal. Labor Code § 2698, *et seq.* (Id., at ¶ 19).

On June 16, 2017, Defendant filed an answer to Plaintiff's FAC generally denying Plaintiff's claims and asserting various affirmative defenses once again. [Dkt. No. 13]. (Id., at ¶ 20).

In May of 2017, the parties stipulated to attending a private mediation of the case on October 17, 2017. The parties agreed to exchange their informal discovery requests. On September 26, 2017, Defendant's counsel provided Plaintiff's counsel with a set of documents including, *inter alia*, (1) Defendant's collective bargaining agreement in effect from 2011 through 2019; (2) a class list including employee numbers, hire dates, and termination dates; (3) drivers' time records including dates, clock in and out times, and meal break start and finish times; (4) detail payroll registers for a sampling of drivers; and (5) Plaintiff's paystubs. On September 29, 2017, Defendant's counsel informed Plaintiff's counsel that the total number of shifts driven by Class Members from March 15, 2013

through February 25, 2017 is 63,347. On October 3, 2017, Defendant's counsel informed Plaintiff's counsel that only 5% of drivers runs were paid out on a piece-rate. (Id., at ¶ 21).

On October 17, 2017, the parties participated in a full-day mediation led by a highly skilled and experienced mediator, Mark S. Rudy. Prior to the mediation, the Parties submitted detailed mediation briefs to Mr. Rudy, supported by excerpts of the evidence contained in the pleadings and the parties' respective independent research and investigation. After a full-day mediation, the parties reached an agreement on a class-wide settlement, as fully specified in the Settlement Agreement. (Id., at ¶ 22). On December 12, 2017, after nearly two months of additional negotiations, the Parties formalized the Settlement Agreement. (Id., at ¶ 23).

Plaintiff then prepared and filed a motion for preliminary approval of the Settlement, which was heard on February 27, 2018. On February 27, 2018, the Court entered an Order preliminarily approving the Settlement [Dkt No. 19, the "PA Order"], including the attorneys' fees allocation of up to $98,250.00 to Class Counsel, representing 25% of the Settlement amount, and litigation costs not to exceed $5,000. (PA Order § 6.c-d). On May 3, 2018, Plaintiff filed his motion for attorneys' fees and costs [Dkt. No. 20], which will be heard simultaneously with this Motion for final approval of the Settlement.[4]

### B.    Summary of Settlement and Results of Class Notice Administration

In accordance with the Settlement and PA Order, the Notices of Proposed Class Action Settlement and Share Forms (collectively, the "Notice Packets") were mailed to the Class Members on March 30, 2018, and the deadline to opt out of or object to the Settlement (or Plaintiff's fee motion) expired on May 14, 2018. (MCV Decl., ¶ 6). The response of the Class members to the Class Notice has been exceptionally positive:

---

[4] Plaintiff filed his fee motion before the expiration of the objection period to comply with Fed. R. Civ. P. 23(h)(1)-(2) (indicating that Class Members must have an opportunity to object to the fees motion), and applicable Ninth Circuit case law. See *In re Mercury International Group*, 618 F. 3d 918, 933 (9th Cir. 2010).

➤ After conducting thorough skip traces on all Notice Packets that were returned and remailing, only two Notice Packets were returned as undeliverable, resulting in a 98.9% success rate in delivery of the Notice Packets. (MCV Decl., ¶ 5.b).

➤ Following the expiration of the time to opt out or object, only a single Class Member opted out of the Settlement. (Id., ¶ 6).

➤ Following the expiration of the time to opt out or object, *not a single Class Member objected to the Settlement or the fees motion*. (Id., ¶ 6).

➤ All but one of the 190 Class Members will therefore participate in the Settlement, yielding a 99.4% participation rate. (Ackermann FAM Decl., ¶ 4).

➤ If the Court grants final approval to the class action settlement, 100% of the Net Settlement Fund of $271,089.51 will be distributed to the 189 Participating Class Members on a pro-rata basis. (Id.).

➤ The average Settlement share is $1,426.79 per Participating Class Member, and the maximum share is $2,480.12 for those Participating Class Members who worked for Defendant throughout the Class Period. (MCV Decl., ¶¶ 9, 10).

Plaintiff, through the Settlement Administrator, has thus provided notice of the Settlement to the Class in full compliance with the Court's Preliminary Approval Order. (MCV Decl., ¶ 5). The response of the Class to the Notice Packets not only supports the Court's decision to grant preliminary approval of the Settlement, but also amply supports the Court proceeding to grant final approval of the Settlement. Given the 99.4% Settlement participation rate among the Class Members (only one request for exclusion) and the complete lack of objections, there are truly are no reasons for this Court to deny final approval of the Settlement, which it has already approved on a preliminary basis. For the reasons set forth herein, in Plaintiff's Motion for Attorneys' Fees and Costs [Dkt. No. 20], in Plaintiff's motion for preliminary approval, the Court should enter an order finally approving the Settlement, including attorneys' fees and costs, settlement administration expenses, the proposed service award to the Class Representative, and payment to the LWDA.

## II.    CLASS MEMBERS WERE GIVEN THE BEST PRACTICAL NOTICE OF THE SETTLEMENT

In approving a class action settlement, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. Rule Civ. Proc. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). The notice is sufficient for purposes of due process if it contains a description of the litigation to terms of the settlement, and explanation of the right to opt-out of or object to the settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

The notice procedure approved by the Court was and is the best notice practicable. As discussed above, the settlement administrator duly mailed the Notice Packet to all 190 Class Members. (MCV Decl., ¶ 5). When a Notice Packet was returned undeliverable, the settlement administrator made reasonable efforts to obtain a valid mailing address by first processing and updating the address through the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service, and then performing advanced skip traces via Experian to locate new addresses for mail that was returned. (Id., ¶ 5.a). This resulted in the successful delivery of 188 Notice Packets (a 98.9% success rate). (Id., ¶ 5.b). Thus, 188 or 98.9% of the Settlement Class were successfully notified and presumptively received actual notice of the settlement and it terms.

The Notice Packet provided Class Members with all relevant information needed to make an informed decision as to whether to opt-out, participate or object to the Settlement. (See MCV Decl., **Exhibit B**). It provided an explanation of the litigation and proposed settlement terms, and procedures on how to opt out, object and/or appear at the final fairness hearing. (Id.). The documentation provided a brief explanation of the case, the

exclusion date and procedure for exclusion, the proposed attorneys' fees, litigation costs, administration costs, service award, and LWDA payment to be requested and the individual members' estimated recovery, which were all included in the notice papers. It also stated that those who do not opt out will be bound by the Settlement and Class release. (Id.). Moreover, the Court approved the Notice Packet as to form and content in its PA Order. (PA Order, § 7). Therefore, the Court may proceed to determine the fairness and adequacy of the settlement, secure in the knowledge that all Class Members have been given the opportunity to participate in the notice process, and have been fully apprised of their rights and options, including their rights to object or request exclusion.[5]

## III.  THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT

### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 23, "[t]he claims . . . of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e)(1). The court must engage in a two-step process to approve a proposed class action settlement. First, the court must decide whether the proposed settlement deserves preliminary approval. *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004). Second, after notice is given to class members, the Court must determine whether final approval is warranted. *Id*. A court should approve a class settlement under Rule 23(e) if it "is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted); *accord In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 458 (9th Cir. 2000) (citation omitted).

Courts in the Ninth Circuit look to the following eight factors to assess whether final approval of a settlement is warranted: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount [that is] offered in settlement; (5)

---

[5] All the notice requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715 have also been timely satisfied (Ackermann Decl., ¶ 15).

the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011); *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026. (9th Cir. 1998). "Not all of these factors will apply to every class action settlement" and "[u]nder certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telcomms.*, 221 F.R.D. at 525-26. In addition, courts consider the manner by which the settlement was reached to ensure that it is not a product of fraud or collusion. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

In considering these factors, courts recognize the strong judicial policy favoring settlements, particularly in the context of complex class litigation. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). There is no requirement to assess whether the settlement is ideal or the best outcome, but "only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class." *Barnes v. Equinox Grp., Inc.*, 2013 WL 3988804, at *2 (N.D. Cal. Aug. 2, 2013) (quoting *Hanlon*, 150 F.3d at 1027).

### B.   Strengths of the Case and Risks of Litigation

Plaintiff briefly addresses the strength of the case and risks of continued litigation to avoid belaboring the points made in Plaintiff's Motion for Preliminary Approval of Class Action Settlement [Dkt No. 16-1] and Motion for Attorneys' Fees and Costs [Dkt No. 20]. The Settlement is a very good result for the Class in view of the strength of and possible range of recoveries for the Class' claims and the great risks posed in continuing with litigation. Although Plaintiff believed that there was a strong possibility of certifying the claims and prevailing on the merits, they also recognized the potential risk, expense, and complexity posed by litigation, such as class certification, summary judgment, trial and/or on the damages awarded, and an appeal that could take several more years to litigate. (Ackermann PAM Decl. ¶ 28). Defendant presented a number of compelling defenses, and

denied and continues to deny generally the claims and contentions alleged in the FAC. (Ackermann PAM Decl. ¶ 29).

As explained in detail in Plaintiff's Motion for Preliminary Approval of the Settlement [Dkt No. 16-1], Defendant asserted a potential federal preemption defense to Plaintiff's claims arguing that Plaintiff's rest break and wage and hour claims are or may become subject to preemption based on the Federal Aviation Authorization Administration Act of 1994 (Ackermann PAM Decl., ¶ 31-35).[6] Additionally, Defendant contended that Plaintiff would be unable to certify a class, or at least certain claims asserted such as the rest break claim. Specifically, Defendant maintained that individualized issues would predominate in that Defendant had DOT logs which evidenced that nearly 50% of drivers took rest breaks in compliance with California law. Furthermore, Defendant pointed to courts that have either denied class certification and/or granted defendant's motions for summary judgment in similar cases. (Id., at ¶ 36). Defendant also contended that Plaintiff cannot point to any ascertainable injury stemming from the inaccurate wage statements and cannot demonstrate that Defendant's violations were knowing and intentional, as required by Labor Code § 226(e)(1). (Id., at ¶ 37). Lastly, Defendant contended that because Plaintiff's claims for waiting time penalties, PAGA penalties, and UCL violations are derivative of their other claims, they suffer from the same shortcomings. Defendant also pointed to the fact that courts have discretion to award lesser PAGA penalties pursuant to Labor Code § 2699(e)(2). (Id., at ¶ 38).

Factually, Defendant argued that the DOT logs showed that 50% were compliant with California law, and that DOT logs in general were not indicative of rest breaks taken, since drivers did not have to log state rest periods at all on their DOT logs or anywhere, except when they were paid piece-rate and then only since January 1, 2016. See Labor Code section 226.2. Furthermore, Defendant alleged that while evidence of rest breaks

---

[6] The risk of retroactive FAAAA preemption passing Congress has increased since the FAA reauthorization bill including the "Denham Amendment" recently passed the House of Representatives: See: http://thehill.com/policy/transportation/385189-house-passes-5-year-reauthorization-of-federal-aviation-administration.

taken is not obvious from DOT logs, Defendant's rest break policy is substantially compliant with California law, therefore, Plaintiff's alleged violation rate as to rest breaks was overstated. (Id., at ¶ 30). Defendant's also argued that Plaintiff's claim that Defendant failed to pay hourly and separately for rest breaks in violation of Labor Code § 226.2 and *Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864, 872-73 (2013), was only viable on 5% of all routes worked, where drivers were paid on a piece-rate basis.

Despite the foregoing risks, Plaintiff and Class Counsel recovered $393,000.00 on behalf of the Class, an amount that the Class members would likely not have recovered independent of this action. Given the uncertainty associated with the merits and the risk of non-certification, Plaintiff obtained a good settlement for the Class.

### C.    Amount Offered in Settlement

As discussed at length in Plaintiff's Motion for Preliminary Approval, Plaintiff calculated the Class' maximum realistic risk adjusted liability on his claims as follows:[7]

| | | |
|---|---|---:|
| Labor Code § 226.7 (rest break premiums): | $ | 273,867.88 |
| Labor Code § 226 (wage statement claims): | $ | 287,127.00 |
| Labor Code § 203 (waiting time claims): | $ | 70,000.00 |
| **TOTAL** | **$** | **630,994.88** |

Thus, the Settlement represents a sound and generally accepted basis for comparison to the Defendant's maximum realistic risk adjusted liability that Plaintiff contends is owed to the Class, and is a fair compromise given the risks and uncertainties presented by continued litigation. (Id., ¶ 40).[8] The average and maximum amounts obtained per class member here are also consistent with results obtained in similar cases. See CJA Decl., ¶ 8 (cites examples).

Defendant asserted and would have continued to assert legal and factual grounds to defend against this action, including the possibility of federal retroactive preemption, non-

---

[7] *See* Ackermann PAM Decl., ¶ 27

[8] Plaintiff obtained approximately 62% of the realistic maximum liability exposure (i.e., $393,000 / $630,994.88 = 62%)

certification of Plaintiff's claims, and factual and legal defenses on the merits. (Id., ¶¶ 30-38). While Plaintiff remains confident in his position that Defendant violated California law, at least as to 5% of the routes, Defendant maintained that they were not liable. Moreover, continued litigation would be costly, time consuming, and uncertain in outcome. By contrast, this Settlement ensures timely relief and substantial recovery of the unpaid wages, premiums, and penalties Plaintiff contends are owed to the Class. (Ackermann PAM Decl., ¶ 43).

### D.   The Extent of Discovery Completed and the Stage of Proceedings

The amount of discovery completed affects approval of a stipulated settlement because it indicates whether the parties have had an "adequate opportunity to assess the pros and cons of settlement and further litigation." *In re Cylink Sec. Litig.*, 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003). As detailed in Plaintiff's Motion for Preliminary Approval, significant informal discovery and investigation was conducted by both sides, prior to mediation and a negotiated resolution of this case. See CJA PAM Decl., ¶ 21.

Prior to negotiating the Settlement, the Parties agreed to exchange their informal discovery requests. On September 26, 2017, Defendant's counsel provided Plaintiff's counsel with a set of documents including, *inter alia*, (1) Defendant's collective bargaining agreement in effect from 2011 through 2019; (2) a class list including employee numbers, hire dates, and termination dates; (3) drivers' time records including dates, clock in and out times, and meal break start and finish times; (4) detail payroll registers for a sampling of drivers; and (5) Plaintiff's paystubs. On September 29, 2017, Defendant's counsel informed Plaintiff's counsel that the total number of shifts driven by Class Members from March 15, 2013 through February 25, 2017 is 63,347. On October 3, 2017, Defendant's counsel informed Plaintiff's counsel that only 5% of drivers runs were paid out on a piece-rate. (Ackermann PAM Decl. ¶ 21). The parties also drafted and exchanged detailed mediation briefs setting forth the strengths and weaknesses of their claims and defenses. (Id., ¶ 22), including detailed damages analyses. (Id.).

Based upon the record that was developed through this investigation and informal discovery processes, Plaintiff's Counsel were able to realistically estimate class damages and assess the risks of further litigation. (Id., ¶¶ 25, 43). It was only after the parties investigated and evaluated the strengths and weaknesses of the case, attended a full-day mediation, and engaged in hard-fought negotiations, that the settlement was completed. (Id., ¶ 22; Ackermann FAM Decl., ¶ 11). This Settlement, therefore, was reached only after the parties had a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement. See *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases"). With this information, Plaintiff and his counsel were able to formulate detailed damage models, engage in informed negotiations, and reach a sensible and fair settlement, taking into account Defendant's defenses, other similar settlements of similar cases, and the true value of money for Class Members. (CJA PAM Decl., ¶ 25).

### E.   Counsel Believes the Settlement is in the Best Interest of the Class

The experience and views of counsel also weighs in favor of approving the Settlement. Counsel for both parties have substantial experience in prosecuting, defending, and/or negotiating the settlement of employment wage-and-hour class actions for truck drivers, concur that the settlement is fair, and Class Counsel have recommended approval of the proposed settlement as in the best interests of the Settlement Class. (Ackermann FAM Decl., ¶ 10). *See Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.") *aff'd,* 661 F.2d 939 (9th Cir. 1981). Class Counsel together with the named Plaintiff strongly believe that the proposed settlement is a fair, adequate, and a reasonable resolution of the Class's dispute with Defendant and is preferable to continued litigation. (Ackermann PAM Decl., ¶ 43; Ackermann FAM Decl., ¶¶ 10, 11; Wasserman PAM Decl., ¶¶ 13, 16).

### F.    Class Members Overwhelmingly Endorsed the Settlement

The Court may appropriately infer that a class action settlement is fair, adequate and reasonable when, among other reasons, few class members object to it. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.").

Here, the reaction of the Settlement Class Members has been one of overwhelming approval – only a single Class Member requested to be excluded from the Settlement and there were no objections to the Settlement, the proposed Service Award or to Plaintiff's fee request and motion. (MCV Decl., ¶ 6). These results demonstrate that the Class Members overwhelmingly approve of the Settlement, which weighs heavily in favor of granting of final approval. *See Bolton v. U.S. Nursing Corp.*, 2013 WL 5700403, at *2, *4 (N.D. Cal. Oct. 18, 2013) (approving settlement where no objections were filed and one of 2,765 class members requested exclusion from settlement). These stellar results of the Class Notice process alone provide a compelling basis for the Court to grant final approval of the Settlement.

## IV.    THE PROPOSED PAGA ALLOCATION SHOULD BE APPROVED

When PAGA claims are settled, the trial court must "review and approve" the settlement. Labor Code § 2699(l). In so doing, the court must consider whether the proposed "PAGA settlement is fair and adequate in view of the purposes and policies of the statute." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1135 (N.D. Cal. 2016). The parties have agreed to allocate $10,000 of the Gross Settlement Amount as PAGA penalties, and the Court has granted preliminary approval of this allocation. Of this amount, 75% (i.e., $7,500) shall be sent to the Labor and Workforce Development Agency (LWDA), and the remaining 25% shall be distributed to the Class.

This allocation is fair and reasonable given the limited nature of those claims, which would only apply to a minority of the Class members who worked for Defendant within a year of the PAGA notice having been mailed. Courts "repeatedly approve[] PAGA

allocations of both smaller amounts and that comprised a smaller portion of the total settlement consideration in the agreements at issue." (See *Davis v. Cox Commc'ns California, LLC*, No. 16cv989 BAS (BLM), 2017 WL 1496407, at *1 (S.D. Cal. Apr. 26, 2017) (preliminarily approving $4,000 PAGA allocation in $275,000 settlement); *Moore v. Fitness Int'l, LLC*, No. 12cv1551 LAB (NLS), 2014 WL 12571448, at *5 (S.D. Cal. Jan. 22, 2014) (approving $2,500 PAGA allocation when attorneys' fees award alone amounted to $200,000); *Jack v. Hartford Fire Ins. Co.*, No. 09cv1683 MMA (JMA), 2011 WL 4899942, at *6 (S.D. Cal. Oct. 13, 2011) (approving $3,000 PAGA allocation in $1,200,000 settlement); *Singer v. Becton Dickinson & Co.*, No. 08cv821 IEG (BLM), 2010 WL 2196104, at *2 (S.D. Cal. June 1, 2010) (approving $3,000 PAGA allocation in $1,000,000 settlement); *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009) (approving $1,500 PAGA allocation in $1,026,000 settlement); *In re Nordstrom Commission Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]he trial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").) Thus, the $10,000 PAGA allocation out of the $393,000 Gross Settlement Amount, which the Court has preliminarily approved, is well within a fair and reasonable range for the PAGA penalties and should now be finally approved.

## V.   THE REQUESTED SERVICE AWARD IS REASONABLE

The Settlement contemplates a service award to the named Plaintiff in an amount of $7,500, to recognize his time and efforts on behalf of the Class, including time spent in meetings with Class Counsel, his efforts in gathering and providing documents, being available at mediation, and his acceptance of the financial risk in pursuing this litigation, and his agreement to a release that is broader than the release of the Class. (Ackermann Decl. ¶ 14).

Plaintiff was instrumental in prosecuting this lawsuit and was an important source of information during the course of this litigation. (Id.) Plaintiff provided invaluable assistance to Class Counsel and the Class in this case, including providing factual

background for the Class Complaint and mediation; participating in phone calls to discuss litigation and settlement strategy; and reviewing the settlement documents. (Id.) Plaintiff agreed to participate in this case with no guarantee of personal benefit. (Id.) Further, Plaintiff agreed to undertake the financial risk of serving as Class Representative and exposed himself to the risk of negative publicity by anyone who opposed this case. (Id.) The Class would have received no benefit had it not been for the contributions of Plaintiff. Moreover, Plaintiff faced and accepted the significant risk in bringing this litigation—namely, that had he lost, Plaintiff could have been ordered to pay Defendant's costs. As noted, in contrast to the more limited class release, Plaintiff also agreed to a more robust general release of all his individual claims. (Id.).

Moreover, the requested service award falls well within the range of incentive payments typically awarded to Class Representatives in similar class actions. *See e.g. Bond v. Ferguson Enterprises, Inc*., No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. June 30, 2011) (approving $11,250 service award to each of the two class representatives in a trucker meal break class action); *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 493 (E.D. Cal. 2010) (approving service awards in the amount of $10,000 each from a $300,000 settlement fund in a wage/hour class action); *West v. Circle K Stores, Inc*., No. CIV. S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558, at *28 (E.D. Cal. Oct. 19, 2006) ("the court finds plaintiffs' enhancement payments of $15,000 each to be reasonable."); *Louie v. Kaiser Found. Health Plan, Inc*., No. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314, at *18 (S.D. Cal. Oct. 6, 2008) (approving "$25,000 incentive award for each Class Representative" in wage an hour settlement); *Garner v. State Farm Mut. Auto. Ins. Co*., No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class"). Therefore, the service award contemplated by the Settlement, which no Class Member has objected, should be approved. //

## VI.    THE REQUESTED ATTORNEYS FEES AND COSTS ARE REASONABLE

Plaintiff has filed a separate Motion for Attorneys' Fees and Costs [Dkt No. 20] setting forth in detail the reasons for which the award of fees and costs contemplated by the Settlement are fair and reasonable, and should be approved. In summary, the attorneys' fees should be granted because Class Counsel showed great skill, thoroughness, and conscientiousness in investigating and developing the claims, liability theories, and estimated possible recoveries in the litigation, and otherwise expended great effort on behalf of the Class; Class Counsel has ample experience in and has successfully litigated similar wage and hour class actions on behalf of truck drivers challenging a compensation scheme that paid on a piece-rate basis with no separate and hourly pay for non-driving time and rest breaks, and vigorously pursued those matters and this case (Ackermann PAM Decl. ¶¶ 4-13; Wasserman PAM Decl. ¶¶ 23-26); the requested fees are allowed by statute, they are reasonable in light of the Ninth Circuit's benchmark of 25% of the common fund in awarding fees in class actions, time Class counsel expended litigating this matter, and in the context of a lodestar crosscheck; and the requested fees are also in line with awards in similar cases. *See e.g. Fernandez v. Victoria Secret Stores,* 2008 U.S. Dist. LEXIS 118631, *1 (C.D. Cal. 2008) (34% award); *Hightower v. JPMorgan Chase Bank, N.A.*, No. CV111802 PSGPLAX, 2015 WL 9664959, at *11 (C.D. Cal. 2015) (30% award); *Ingalls v. Hallmark Mktg. Corp.,* 2009 U.S. Dist. LEXIS 131078, *6 (C.D. Cal. 2009) 08cv4342 VBF (Ex), Doc. No. 77, ¶ 6 (33.33% award); *Elliott v. Rolling Frito-Lay Sales, LP*, 2014 U.S. Dist. LEXIS 83796, *29 (C.D. Cal. 2014) No. SACV 11-01730 DOC (30% award); *Rippee v. Boston Mkt. Corp.,* 20106 U.S. Dist. LEXIS 101136, *13 (C.D. Cal. 2006) Case No. 05cv1359 BTM (JMA), Doc. No. 70, at 7–8 (awarding 40% of common fund as attorneys' fees in a wage and hour class action); *Birch v. Office Depot, Inc.*, 2008 U.S. Dist. LEXIS 102747, *7 Case No. 06cv1690 DMS (WMC), Doc. No. 48, ¶ 13 (awarding 40%

of common fund as attorneys' fees in a wage and hour class action).[9] Moreover, the requested cost award was already preliminarily approved by the Court.[10]

Accordingly, all of the factors used in determining the appropriateness of a fee and cost reimbursement support the conclusion that the amount of fees and costs requested by Class Counsel for their efforts on behalf of the Class are reasonable.

## VII.  CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court enter the proposed order submitted herewith finally approving the Settlement, including the allocations for attorneys' fees, costs, settlement administrator expenses, the proposed service award to Plaintiff, the PAGA allocation, and the pro rata settlement awards to all of the Participating Class Members.[11]

Respectfully submitted,

ACKERMANN & TILAJEF, P.C.
MAYALL HURLEY P.C.

Dated: May 29, 2018          By:    /s/Craig J. Ackermann
                                    Craig J. Ackermann, Esq.
                                    Attorneys for Plaintiff and the Class

---

[9] *See also Benitez v. Wilbur*, E.D. Cal. Case No. 08-1122 LJO GSA (33.33% award). *Alvarado, et al. v. Nederend*, 2001 U.S. Dist. LEXIS 52793, *31 (E.D. Cal. 2011), E.D. Cal. Case No. 1:08-cv-01099 OWW DLB (33.33% award); *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 492 (E.D. Cal. 2010), Case No. 1:07-cv-00227 (33.33% award); *Chavez, et al. v. Petrissans*, 2008 U.S. Dist. LEXIS 111596, (E.D. Cal. 2008), 1:08-cv-00122 (33.3% award).

[10] Class Counsel actually incurred litigation costs in the amount of $9,899.49, however, Defendant agreed to pay separately from the Gross Settlement Amount, $7,000 in mediation fees to Plaintiff's Counsel. (CJA Fee Decl., ¶ 16; Wasserman Fee Decl., ¶ 16).

[11] If the Court grants final approval to the settlement, settlement awards will be mailed out to Class Members, and funds associated with any uncashed checks will be sent to the State of California's DLSE Unclaimed Wages Fund.